## LOOMIS vs. GREEN.

A plaintiff having caused goods to be attached and returned as the property of the defendant, is not thereby estopped from showing that they were the property of another.

It is only where the damages recovered include the value of the article for the taking of which the action was brought, that the chattel is transferred by operation of law, and the property therein vested in the trespasser.

Therefore where, in an action of trespass for breaking and entering the plaintiff's close, and cutting down and carrying away divers timber trees, the plaintiff attached the timber, and took it into his own possession as reclaimed by himself; the defendant confessed the trespass; and the plaintiff entered a formal abandonment of so much of the action as related to the carrying away of the timber, and proceeded for damages for breaking and entering his close and prostrating his trees; for which he had judgment for nominal damages only;—it was held that by this judgment the title to the timber was not changed.

Where one has wilfully confounded his own goods with others of the same kind belonging to a stranger, and would reclaim them by law, the burden of proof is on himself, to distinguish his own goods from those of the stranger.

In an action of trespass for breaking and entering the plaintiff's close, and cutting and taking away a large quantity of his timber trees, it is not competent for the defendant, in mitigation of damages, to prove that the estate is made more valuable by his labor and expenses in opening the forest and making improvements.

THIS was an action of trover, to recover the value of twenty five pine mill logs, with certain marks thereon, particularly described in the writ; and it came up by exceptions taken to the opinion and decisions of *Whitman C. J.* in the court below.

It appeared that the plaintiff, at a former period, without lawful authority, had entered upon a township of land in New Hampshire, belonging to the trustees of *Dartmouth* college, from which he had

cut and taken away a large number of pine logs, turning them into the *Dead Diamond* river, a tributary stream of the *Androscoggin* river, flowing through the township, to be floated to the mills in *Brunswick* and *Topsham*. He also had another large quantity of logs of his own, which in the same winter, were turned into the *Magalloway* river, another branch of the *Androscoggin*, to be floated to the same mills. Both these parcels of logs were marked with the same marks. On the 13th day of *March* 1830, before the river had broken up, the trustees of the college sued *Loomis* in an action of trespass *quare clausum fregit*, for cutting down and carrying away five hundred of their pine timber trees of the value of two dollars each, between *Jan.* 1st and the date of the writ; and the officer returned on the writ, that by direction of the agent of the trustees he had attached four hundred and seventy five pine mill-logs, marked as described in the present action, lying in *Dead Diamond* river, as the property of *Loomis*. These logs were receipted for by the agent; and afterwards were driven down the river to *Brunswick*, by *Loomis*, in pursuance of an agreement between him and the agent. This suit was entered at *September* term following, in the county of *Coos*; at which time, in consequence of the trustees agreeing to proceed forthwith to trial, and to give *Loomis* a bond of indemnity against the claims of all other persons, he gave them, for the purposes of that suit, a written admission of the trespass as alleged in their writ. The general issue was then pleaded to the action; which the trustees joined; and further said " that as to the defendant's said plea, so far as relates to the carrying away of the pine trees in their declaration mentioned, they the said trustees will not further prosecute the said *Loomis*, but only for the breaking and entering the said close, and for cutting and prostrating the pine timber aforesaid." The cause then proceeded to trial, and a verdict was returned in favor of the trustees, for one dollar damages.

It also appeared that *Magalloway* river, the mouth of which is ten or twelve miles below that of the *Dead Diamond*, broke up a week or ten days before the latter river; and that the logs in the *Dead Diamond* river were delayed in their course to the *Androscoggin* by a freshet, which carried them into the lakes; and that it

was uncertain, as the season was in that year, which parcel of logs would first reach *Brunswick*. The boom-master at *Brunswick* delivered the first logs that came down with the mark in question, to the agents of the trustees; and they were manufactured by the defendant, seventeen of them in *August* 1830, and the residue in *October* following.

The defendant in the present action admitted that he took and converted to his own use twenty two logs, marked as described in the plaintiff's writ; which he claimed under a bill of sale made to him by the treasurer of the college, after the rendition of the judgment against *Loomis*, but without the authority of any special vote of the corporation.

It further appeared that neither the trustees nor the defendant had any actual possession of the logs, till they were taken from the boom in *Brunswick;* otherwise than as the trustees were owners of the land from which they were taken.

Upon this evidence, *Loomis* the plaintiff contended that the trustees, having caused the logs to be attached as his property, in their action of trespass against him for taking them, were now estopped to deny his title;—that the agreement and pleadings in that action amounted to a *retraxit*, and not to a *nolle prosequi;*—that by the judgment for the trustees in the same action, the title to the logs sued for became vested in *Loomis;*—and that as the present defendant admitted the taking of some logs having the plaintiff's mark, and the plaintiff had shown a good title to a much larger quantity which came down from the *Magalloway*, the burden of proof was on the defendant, to show that the logs which he took were those which came from the *Dead Diamond* river, and not from the *Magalloway*. All which points the chief justice ruled to the contrary.

The plaintiff further offered to prove that even if the logs were cut on the college township, yet the roads he had made through it, and the canals he had dug, at great expense, for the purpose of conveying the timber to the *Androscoggin*, and his labors in exploring and opening the forest, were of such value, that the property of the corporation was on the whole increased rather than diminished, by what he had done; the facilities which he had created for the

transportation of the remaining timber having augmented its value by a greater sum than the logs were worth which he had taken away ; and he insisted that the jury might fairly presume that the trustees, from a sense of equity and justice, were willing to abandon to the plaintiff, as his property, the timber they had attached, asserting their title to the land by a verdict and judgment for only nominal damages. But this evidence the chief justice refused to admit.

To which opinions and decisions the plaintiff tendered a bill of exceptions, which was allowed ; a verdict having been returned for the defendant.

*Fessenden* and *Deblois*, for the plaintiff, argued in support of the positions taken in the court below ; and to the point of estoppel, resulting from the original attachment and return of the loss, cited *Olivant v. Berino*, 1 *Wils.* 23 ; *Power v. Wells, Cowp.* 819 ; *Curtis v. Groat*, 6 *Johns.* 168 ; *Broome v. Wootton, Yelv.* 67 ; *Adams v. Broughton*, 2 *Stra.* 1078 ; *Cro. Jac.* 74 ; *Floyd v. Brown*, 1 *Rawle* 121 ; *Kitchen v. Cammett*, 3 *Wils.* 304 ; 2 *W. Bl.* 831 ; 3 *Stark. Ev.* 1505, *notes* ; *Smith v. Gibson, Cas. temp. Hardw.* 319 ; *Earl v. Sawyer*, 4 *Mason* 13 ; *Toller's Ex.* 239. To the effect of the pleadings and record in the suit in New Hampshire, as showing a *retraxit*, and therefore being a good bar to any farther pursuit of the same property, they cited *Sellon's Pr.* 338 ; 3 *Bl. Com.* 296 ; *Beecher v. Shirley, Cro. Jac.* 211 ; *Co. Lit.* 139, *a ; Greene v. Charmock, Cro. Eliz.* 762 ; 1 *Wils.* 89 ; *F. N. B.* 78, *f ; Bridge v. Sumner*, 1 *Pick.* 371. And as to the *onus probandi*, they cited 3 *Stark. Ev.* 1488 ; 1 *Campb.* 551 ; *Bassett v. Maynard, Cro. Eliz.* 819.

*Longfellow* and *Everett*, for the defendant, cited *White v. Philbrick*, 5 *Greenl.* 147 ; *Somes v. Skinner*, 16 *Mass.* 357 ; 1 *Saund.* 207, *a.* note ; *Tidd's Pr.* 629, 630 ; 1 *Com. Dig. tit. Abridgment A.* 1, 2 ; 2 *Com. Dig. tit. Estoppel B. C. E.* 3, 4, 9 ; *Wallis v. Truesdell*, 6 *Pick.* 455 ; *Jewett v. Warren*, 12 *Mass.* 300 ; *Higginson v. York*, 5 *Mass.* 341.

PARRIS J. delivered the opinion of the Court.

To maintain this action it is incumbent on the plaintiff to prove that he has either a general or special property in the logs mentioned in his declaration. It is admitted that he cut them on lands belonging to the trustees of *Dartmouth* college, under whom the defendant claims, and that in so doing he was a trespasser. They were then the property of that corporation, and no act of the plaintiff's could divest the trustees of their property so long as it could be identified, wherever it might be found, or through whatever channel it might have passed. They asserted their claim to this property by prosecuting the plaintiff in the courts of New Hampshire for detaching it from the soil; and inasmuch as the officer, on the original writ in that suit, attached the logs as the property of *Loomis*, he contends that the trustees and the defendant claiming under them, are estopped to deny that the property was in him. But we are not aware that the principles of estoppel have ever been, or can properly be applied to this extent; and it is not in accordance with the policy of the law that their application should be extended. There would seem to be no reason why the creditor should be estopped, that would not operate with equal force against the officer making the attachment. They both may have been under a mistake. The property may have been removed by the trespasser, or so mixed with his own, as to render it difficult to distinguish the one from the other; and yet it would not be doubted but the original owner might claim his, whenever it could be designated with proper certainty. Any intermediate attachment of it, as the property of the trespasser, would be operative no farther than as an admission by the plaintiff founded upon erroneous information, and, of course, not binding. It has been repeatedly decided that an officer, who has attached personal property on an original writ, may defend successfully, in an action against him for not taking the same property on execution, by showing that it was not the property of the judgment debtor. But even if the return of the officer, taken by itself, would amount to an estoppel, the plaintiff cannot avail himself of it here, inasmuch as the whole record of that case is introduced by him-

self ; and although, as he contends, it may appear, by the return of the officer, that the logs were attached as *Loomis's* property, yet by the judgment and other papers in the case, which will presently be adverted to, it clearly appears that they were not his.   Under such circumstances how can there be an estoppel ?   If, as the plaintiff contends, it could have been created by the return, it would be enlarged by the judgment.

We are of opinion that the instructions of the Judge in the court below, that the trustees were not estopped from denying that the logs were *Loomis's* property, were correct.

The next exception is to the instruction, that the agreement and pleadings filed on the part of the trustees amounted merely to a *nolle prosequi*, as to the taking and carrying away the logs, and not to a *retraxit*.

Perhaps it is not very material to the decision of this cause whether it is a *retraxit* or *nolle prosequi*, although we are inclined to think it technically a *retraxit*.   It related merely to the carrying away the pine trees mentioned in the declaration, and not to " breaking and entering the close, or cutting down and prostrating them." The carrying away complained of was between the 1st of *January*, and 13th of *March*, 1830.   A nonsuit is a mere neglect and default of the plaintiff to prosecute his suit, and he is not thereby barred from commencing a new action for the same cause.   But a *retraxit* is an open and voluntary renunciation, by the plaintiff of his suit, in court, and by this he ever loses his action.   If, as contended by the plaintiff, it amounted to a *retraxit*, it was a renunciation of so much of his suit as related to carrying away the pine trnes previous to the 13th of *March*.   But, unless by this the property was changed, it still continued in the trustees, and any further interference with it by *Loomis* would amount to a new trespass, upon which the *retraxit* would not operate.   Did it so change the property ?   As the proceedings then stood, the trustees, in their declaration, had charged *Loomis* with breaking and entering their close, cutting down and prostrating their trees, and carrying them away.

They had, through the intervention of the law, caused the logs cut from those trees to be taken from his possession and be placed

where they could be reclaimed, and they afterwards released him from so much only of the trespass as consisted in carrying them away. The attachment appears to have been abandoned. It would be difficult to perceive how these proceedings could operate as a a change of property.

But it is contended by *Loomis* that the effect of the judgment was to transfer the property to him. A moment's attention to the facts will settle that point. *Loomis* was charged with cutting " five hundred pine timber trees, each of the value of two dollars, and all of the value of one thousand dollars." By his agreement in the case, dated *Sept*. 15, 1830, he " admits that all the timber alleged to be cut, and the trespasses committed, are on the trustees' land, and were cut and committed by him ;" and the jury find him guilty in manner and form as the plaintiffs have declared, and assess damages at one dollar, and judgment was rendered for that sum only. From these facts a doubt cannot remain that the judgment was for a sum merely nominal ; that the trustees, having regained the possession of their property, and *Loomis* having admitted their right to hold it, they abandoned so much of their suit as was for the recovery of the value of the timber, and prosecuted it for the injury sustained by the entering and cutting only.

But the title to the timber is not altered by such a judgment. It is only where the damages recovered include the value of the article for the taking of which the action is brought, that the chattel is transferred by operation of law, and the property therein vested in the trespasser. That not being the case here, the property in the timber was not transferred by the judgment, but remained in the trustees.

Under this view of the case, we think it immaterial whether the agreement and pleadings amounted to a *retraxit*, or a *nolle prosequi*, as, in either case, the rights of the parties to this suit could not be affected by it.

The next instruction complained of relates to the burden of proof. From the exceptions it appears that the logs cut by *Loomis* on the college lands were marked by him with his private mark, and deposited in the *Dead Diamond* river, a tributary stream of the *An-*

Loomis v. Green.

*droscoggin ;* and that he at the same time owned a small quantity of logs, which he acquired by purchase, on the *Magalloway* river, also a tributary stream entering into the *Androscoggin,* on which he also put the same mark ; and that both parcels were floated down said last mentioned river for upwards of one hundred miles by the current, without any particular superintendence. At the trial below, plaintiff contended that the burden of proof was on the defendant to show that the logs he took were not those purchased on the *Magal-loway* by the plaintiff, but that they were those cut on the college lands and floated down the *Dead Diamond* river. But the judge ruled otherwise, and, as we think, correctly. It is one of the most familiar principles of practice, in courts of common law, and which matured reason and obvious convenience dictate, that the burden of proof rests on him who supports the affirmative ; that he who takes the affirmative of any proposition shall prove it ; for the negative does not admit of the simple and direct proof of which the affirmative is capable. Surely, there is nothing in this case at all calculated to relieve the plaintiff from this obligation. On the contrary, as he had marked the logs cut on the college lands, which were the property of the trustees, with the same marks as those which he owned on the *Magalloway,* and turned the whole into the *Andros-coggin,* so that they might go down promiscuously, he had effected what the law terms a confusion of goods ; and this having been done wilfully, and without the mutual consent of the owners of both parcels, it is for the party creating the confusion to distinguish his own property satisfactorily, or lose it.

Another objection to the ruling of the judge is that he excluded certain depositions exhibited by the plaintiff relating to his labor, expenses, and improvements on the college lands, where the trespass was committed. As an offset to the trespass this was clearly inadmissible, and could not have been offered for such purpose. Neither do we perceive that the judge erred in excluding it, if offered to show an inducement operating upon the trustees to abandon the timber to the plaintiff. If there was actually a transfer, proof of that fact would be sufficient without proving the consideration, unless upon attempt to impeach it. If there was no actual transfer by the

trustees, then does the judgment operate to change the property? If it did, parol proof was unnecessary;—if it did not, such proof could not make it effectual for that purpose.

Having thus considered all the questions raised by the exceptions, we cannot perceive any material error in the ruling or instructions of the judge at the trial, and consequently the exceptions must be overruled.