Dillingham v. Smith. .

NATHANIEL H. DILLINGHAM & al. versus WILLIAM H. SMITH & al.

Under our system of statute pleading, the plea of *non cepit* in replevin does not admit the property to be in the plaintiff, *when the plea is accompanied by a brief statement denying that fact.*

Unless the pleading admits the property to be in the plaintiff, replevin cannot be maintained except upon proof of such ownership.

So also the plaintiff must prove his ownership, when the pleadings are such as not to present *merely* an issue upon 'the property being in the defendant.

Where the defendant had a pile of mill logs of a particular mark on the landing, and the plaintiff voluntarily drew other logs into the same pile, and put upon them the same mark, and the defendant took them all into possession, *it was held,* the plaintiff could not maintain replevin for his *proportion* of the logs, but only for *such* of them as he could *identify* to be his own.

Where in a grant, by the State, of a township of land, there are reserved one thousand acres for public uses, according to the statute of 1828, chap. 393, the fee in such reserved land does not, vest in the grantees of the township, even if no town or plantation should ever be established there. The fee is not in them for their own benefit, nor for any other person or party, upon any condition, or limitation or trust whatever.

The State has constituted *itself* the trustee, for the future town or plantation.

Where the County Commissioners caused the reserved land to be set out by an actual location upon the earth, duly entered in the records of the District Court, the boundaries, thus fixed, are conclusive upon the public, whether they include one thousand acres or less than that quantity; and the grantees of the township cannot object that the land set out, does not contain one thousand acres; for they may safely convey and warrant the adjoining lands, by such boundaries. *Neither is the location invalidated* by being taken in two lots, instead of one.

Where lumber had been cut upon the reserved lots, set out as above mentioned, and had been seized and sold by persons claiming to act for the public, it is competent for the purchaser to prove, by parol, that such persons were the acting County Commissioners.

REPLEVIN, for 1478 pine logs, tried before WELLS, J. upon the general issue and a brief statement, alleging title in the defendants, denying the title of the plaintiffs, and praying judgment for a return.

The plaintiffs read a permit from Isaac Farrar & als. to themselves, of Sept. 6, 1845, to enter upon lots No. 1, 2, 7,

8 and others, in township No. 3, range 13; and cut and haul timber therefrom, during the then next logging season.

The State had previously conveyed the township to said Farrar and others, who signed the permit, reserving however one thousand acres for public uses.

The plaintiffs cut the logs under that permit. The defendants, to show title in themselves, offered a bill of sale of a lot of pine logs, from F. Turner and R. Loring, County Commissioners, to the defendant Smith, and one Hilliard. Also a bill of sale from said Hilliard, of his half of said logs, to Pierce, the other defendant. They also offered the record of the proceedings had in the District Court, Piscataquis county, in relation to the location of land reserved for public uses in the township. From that record it appeared, that lots No. 1 and 6, were located for public uses.

It also appeared, by the testimony of Richmond Loring, that he and Forest Turner, both being Commissioners in March, 1846, went to lot No. 1, and found one Horace Brown at work there, who was cutting and hauling logs for the plaintiffs; that they went with Brown and several of his men to Brown's upper landing, which was on lot No 8, and saw there three parcels of logs; that they requested the men to point out all the logs that were cut on No. 1, and they pointed out the middle parcel, excepting two trees; and they requested the men to put P on the logs of the middle parcel for the purpose of indicating that they had been seized as trespass-timber, cut on public lots. According to their measurement, there were in that parcel from 360 M. to 380 M. feet, and they estimated the other parcels to be 200 M. or 300 M. feet more. At the meeting of the Commissioners in the spring following, the logs so seized and marked, were sold as before stated, to Smith and Hilliard.

It also appeared that these logs were driven down the river by plaintiffs, and that said Brown continued to cut and haul from No. 1 to that landing for the plaintiffs, after the Commissioners were there, till the end of the logging season.

On the question of title, the plaintiffs offered to prove, from

the records of the land office, the original plan of said towu-
ship, and also the field notes and report of the survey, for the
purpose of showing the boundaries and number of acres in
each of said lots in said township, and from an actual survey
of lot No. 6, which is described in the record of said District
Court, as located for a public lot, that it contained less than
251 acres ; but the presiding Judge ruled that all evidence on
the subject, of the number of acres in the lots and of the
boundaries of No. 6, which was located for public use, was
inadmissible.

Plaintiffs proved that the defendants had taken and detained
more timber than they were entitled to by said bill of sale,
timber that was cut on lots 7 and 8, and also what was cut on
No. 1 ; that all the logs hauled by said Brown to the landing
on No. 8, being 1535, were marked P before they were driven,
and that a portion of them were cut on No. 7 and 8, and that
the amount detained by them was nearly 200 M. feet more
than was cut on No. 1. There was also testimony tending to
repel this part of the plaintiffs' case.

The presiding Judge informed the counsel for the plaintiffs,
that, if the case should be submitted to the jury, he should rule
" that the evidence introduced by the defendants, if believed,
was sufficient to entitle them to all the timber cut on No. 1,
and that the plaintiff would not be entitled to any portion of
the timber replevied, by merely satisfying the jury that a part of
the logs marked P, were cut on lots 7 and 8, and that all the
logs thus marked, had been taken and detained by defendants,
and that the defendants have thereby got more timber than was
actually cut on No. 1 ; but that they must go further and iden-
tify the very logs cut on 7 and 8, and could recover only for
such logs, as could be .thus identified."

It appeared that the logs cut on No. 1, 7 and 8, were
marked by said Brown, who cut and hauled them for the plain-
tiffs, with the same mark, and that the logs cut on 7 and 8,
could not be distinguished from those cut on No. 1, and that
the logs replevied, were a portion of those cut on 1, 7 and 8.

Whereupon the plaintiffs consented to a nonsuit, subject to

the opinion of the full Court. If any of the views expressed by the Judge were erroneous, then the nonsuit was to be taken off, and the action to stand for trial.

*Rowe* and *Bartlett*, for plaintiffs, extended their opening argument to thirty-three printed pages, and their closing argument to sixteen written pages, and consequently, only a mere abstract can be given.

The plaintiffs make out a *prima facie* case, and must prevail, unless the defendants show a better title. That title is based upon a pretended location of the reserved lands. We deny that there has been any location.

It is well settled law, that all statute powers must be executed strictly.

This rule of law seems to be too firmly established to be shaken or even questioned.

Our principal objection to the proceedings of the District Court is, that the lots set out, contained less than one thousand acres.

The facts proved, and those which the plaintiffs offered to prove, present a case, not of a defective execution of a power, but of the failure of an attempt to execute ; of a non-execution. The severance has not been made, for reserved lands (more than a hundred acres) still lie in common with the lands of the proprietors.

We contend, that the acceptance of the report by the Court does not aid the defect, because the defect was one, which could not be remedied, and the Court had no power to act in the premises. The report was not such as they had a right to consider ; and so they had no jurisdiction.

Will this location be valid, if the town which may hereafter exist upon this tract, shall reject it?

We have *assumed* hitherto, that there is a deficiency in the quantity of land set off, but this may satisfactorily be shown from the report of the committee. The body of water which bounds this lot, No. 6, on the east, is described as a lake, and can be judicially known to the Court only as a lake. And in such cases it has been repeatedly settled by this Court, that

in a conveyance, where land is bounded on a pond or lake, the grant extends only to the margin of the water. *Bradley v. Rice,* 1 Shepl. 198.

All the proposed proof of deficiency in the number of acres set off, was rejected by the presiding Judge.

The 4th § of chap. 122, Revised Statutes, provides, that the return of the doings of the committee, shall be a legal assignment and location. It is the return, and not the judgment of the District Court, which operates as an assignment and location.

The return, then, produced by the defendants, containing in itself no evidence of the " completion of the service" before it was made, and accompained by no evidence to supply the defect, is not even *prima facie* evidence of title, and should not have been admitted.

The record introduced by the defendants, does not show jurisdiction in the District Court, for two reasons; first, because it does not show affirmatively, that the service was completed before the return was made ; and secondly, because it consequently does not show, that the proprietors had notice that the return was to be presented at that term.

But if the jurisdiction of the Court is to be presumed, we then contend, that the record is but *prima facie,* and not conclusive evidence. *Starbuck* v. *Murray,* 5 Wend. 148 ; *Borden* v. *Fitch,* 15 Johns. 141.

Further, if the record be admissible evidence, and the only evidence, and be taken to be indisputably true, still it does not prove a location. It nowhere states, that the one thousand acres reserved in this township, have been set apart and located.

Another objection to this location is, that it was of two lots. Should not the committee, under the circumstances, have set out the whole in one tract ? Can it be contended, that they would have been authorized to set out the thousand acres in one thousand lots, of one acre each ?

Our next position is, that *so much* of the act of 1842, (Sup. to Rev. Stat. page 34, chap. 33,) as requires the location of

the reserved lands, and entrusts the guardianship of them to the County Commissioners, and empowers them to sieze timber, cut on those lands, as trespass timber, is unconstitutional and void.

And again, we contend that the evidence offered by the defendants and admitted, to prove title to the logs, through a seizure and sale by the County Commissioners, was improperly admitted.

Parol proof that Loring and Turner were County Commissioners, should not have been received. If any evidence that "they were acting Commissioners," was admissible, it should have been record evidence. They are bound to keep records and their records are the best evidence of their acting in that capacity.

And the seizure in this case, was made by two only. When such seizure is relied upon as evidence of title, the authority to make it, should be shown ; that a precedent authority from, or a subsequent ratification by, the " board" should be proved by the record.

The Court will see by the papers annexed to the petition for a new hearing, that in fact no money has been paid for the logs. The vendees gave a bond for the payment of money. The authority of the Commissioners was limited to selling for cash.

We deny the correctness of the doctrine of confusion of goods, as laid down by the presiding Judge.

That ruling was based upon the hypothesis, that the plaintiffs were trespassers, a fact which the jury would not be authorized to find, and also upon another assumed fact, that the plaintiffs created the confusion. The case fails to show that the plaintiffs intermingled the different lots of logs.

Here, logs belonging to different owners, of the same description, and bearing a common mark, have become accidentally intermixed. Such intermixture does not make the owners tenants in common. They do not own *per my et per tout* ; but each owns his own logs, by tale, or measurement, in severalty.

The defendants justify their taking, and set up title to the whole, and pray a return. The burden of proof is upon them to show their title. *Greene* v. *Dingley*, 24 Maine, 131. They show title to a portion only, if any, as we say; and on that portion only, can they have a judgment of return. The plaintiffs will be entitled to retain the balance, and if the defendants do not, on the judgment for a return, get their own logs, they have their remedy on the bond. Even if the defend-- ants were entitled to all the logs cut on No. 1, it should have been left to the jury to determine what portion of the logs were cut on No. 1; and the judgment should be, that the defendants should have a return of that portion, less the quantity shown to have been taken and manufactured by them, and that the plaintiffs should hold the balance. *Powell* v. *Hinsdale*, 5 Mass. 343; *Brown* v. *Smith*, 1 N. H. 36.

*Kelley*, *McCrillis* and *Hilliard*, for defendants.

SHEPLEY, C. J. — The plaintiffs caused fourteen hundred and seventy-eight pine logs to be replevied, claiming to be the owners of them, and deriving their title from the owners of township numbered three, in the thirteenth range of towships. Most of them were cut upon lot numbered one in that township.

The defendants claimed to be the owners of the same logs, and exhibit in proof of their title a copy of the record of proceedings in the District Court in the county of Piscataquis, showing, that lot numbered one was, before these logs were cut upon it, located as part of one thousand acres reserved on sale of that township for public use; and testimony to prove, that the logs cut upon that lot had been seized by the County Commissioners for that county as having been cut by trespassers, and sold to the defendants.

The plaintiffs contend, "that the proceedings had with a view to such location were null and void, through a failure to comply with the statute requisitions." Those proceedings have been examined in the case of *Farrer* v. *Loring*, 26 Maine, 202. The objections now made to the location, so far as they were not then considered, will be noticed.

One objection, upon which many others depend, is, that eight hundred and ninety acres and eighty-six rods of land only were designated for public use.

Whether the fact be so will depend upon the bounds of that part of lot numbered six designated for public use. It is bounded on one side by Chesuncook lake. The plan returned by the committee appointed to make the location would indicate, that the lot, being bounded upon the lake, was regarded by them as extending into the lake, so far as it would be by lines drawn at right angles with the southerly and westerly lines of the lot until united ; for those lines are extended by dotted lines on their plan. The use of the term lake as a bound does not necessarily determine, that the land conveyed is limited to the margin. That may depend upon the manner in which the collection of water denominated a lake has been formed ; and parol evidence is admissible for that purpose. *Hathorn* v. *Stinson*, 1 Fairf. 224; *Waterman* v. *Johnson*, 13 Pick. 261. The testimony reported does not show, in what manner the lake referred to was formed, whether by the enlargement of a fresh water stream or otherwise. The burden of proof is upon those who allege, that the proceedings are void by a failure to locate the required number of acres, and they fail to establish the fact.

Another and perhaps more satisfactory answer to this objection may be given. The actual location of a grant of a certain number of acres of land upon the earth, conclusively determines the extent of the grant, although there may afterwards prove to be a greater or less number of acres included within the bounds of such location, than were named in the grant. *Machias* v. *Whitney*, 16 Maine, 243. There can be no difference in principle between the location of a grant and the location of a reservation or exception from the grant.

This township having been conveyed by the State since the passage of the act approved on February 20, 1828, c. 393, the reservation was made of one thousand acres to be appropriated for the benefit of the future expected town, as the Legislature of the State might thereafter direct. A location

of the one thousand acres upon the earth, in the manner prescribed by the Legislature, according to the provisions of the act approved on March 18, 1842, c. 33, § 21, must conclusively determine the extent of the rights preserved by the reservation. The State could never be permitted to allege that the acts of its own officers, performed in the manner prescribed, were not conclusive upon its rights. Such lands are not by the legislative act or by the conveyance appropriated. They are, in the language of the act, "to be appropriated." The expected town or corporation can acquire no title to any definite number of acres for any particular use, except by virtue of such appropriation. In a case like the present, it must derive such title from the State subsequent to the actual location, and must therefore be conclusively bound by the location made or ordered by the State. The rule of law applicable to the ordinary location of grants and conveyances of a certain number of acres of land, which decides, that the location first made upon the earth conclusively determines the extent of the grant, the number of acres of land, and the rights of all subsequent purchasers, applies with equal force to a case like the present. If such rule were not applied, the location might be considered effectual and legal, or not, according to admeasurements made by different surveyors and their assistants, at different times, and with different instruments. Nothing would be finally determined. There would be opportunity for almost perpetual litigation. The application of the rule is essential to the security of the title, as well as to the peace of the community. Any losses or gains, which may result from its enforcement, are comparatively of little importance.

The arguments, that the future town would not be bound by the location already made, and that the owners of the residue of the township could not safely convey it, with covenants of warranty, can therefore have no place. Nor can the arguments prevail, that the location was not completed, that the return of their proceedings made by the committee, and the record of them, are defective, because one thousand acres have not been

Dillingham *v.* Smith.

located. Their return states, "said lots being set off in full, for the one thousand acres reserved in the grant of said township."

Another consideration presented in argument is, that the location could not be legally made in two lots ; that if it could be, it might be made in one thousand lots. The act making provision for a location, does not prescribe, that the one thousand acres shall or shall not be located in one or more lots. The manner of location is therefore left to the committee, subject to the approval of their proceedings by the District Court. Should they appear to have acted in a manner injurious to or destructive of the rights of any party interested, it would be the duty of the Court to refuse to accept their proceedings, and without its sanction, they would be inoperative.

The service having been completed by the committee before their return was made, and the persons interested in the township having been notified of their proceedings, and by law informed, when they were to be presented for acceptance, the argument, that the Court had no jurisdiction, is without foundation.

It is contended that the fee of the whole township was conveyed to the grantees, " for their own use forever, unless a town or plantation should hereafter grow up and become located in the tract ; upon the happening of which contingency, one thousand acres were to pass to such town or plantation."

The language used in conveyances, is to receive such a construction, if possible, as will give effect to the intentions of the parties. The circumstances under which the conveyance was made, may be examined to ascertain such intentions. The conveyance in this case was made and received with a knowledge of the provisions of the act, approved on February 20, 1828, which declares, " that there shall be reserved in every township suitable for settlement, whether timber land or otherwise, one thousand acres of land." This enactment operated upon the agent of the State, authorized to make conveyances,

and it was equivalent to a direction to him, not to convey the one thousand acres. He could properly reserve such a tract to the State, only by omitting to convey it. The reservation in the deed of conveyance, taken with a knowledge of that act and of the power of the agent, must have been understood 'by the agent and by the grantees, to have been used as an exception of so many acres, from the land conveyed. The conveyance in this case, differed from those named in the cases of *Shapleigh* v. *Pillsbury*, 1 Greenl. 271, and *Porter* v. *Griswold*, 6 Greenl. 430. In conveyances or grants of the description named in those cases, the lots designed for public use are appropriated to the persons, corporations, or uses named in the grants or conveyances. In the case of *Porter* v. *Griswold*, which did not require that the legal effect of such reservations should be decided, the Court appears rather to have stated, what it believed to have "been generally understood by all concerned, to amount to a condition subsequent, imposing on the grantees, the obligation to cause the specified proportions to be impartially set apart and assigned for the specified purposes," than to have decided what was the legal effect of such reservations. The case does not decide, that the fee was conveyed to the grantees of the township, in trust, for the benefit of the future *cestuis que trust*. The opinion does indeed state, "if on legal principles, Mr. Rice was not the first settled minister in respect to the lot demanded, then no person has as yet existed, capable of taking the same, inasmuch, as there has never been any settled minister in Porter ; of course, the fee remains in the original grantees or their heirs, and on this ground also, the action must fail. We may go one step further, and say, that if the title to the reserved proportions, for the uses specified, remains in the Commonwealth, until grantees appear capable of taking, as some have supposed to be the law, the consequence would also be equally a decisive bar to this action." It was sufficient for the decision of the case, that Rice was not the first settled minister of that town, and was not therefore, entitled to recover the lot. If he was not, it is not easy to perceive how it followed " of course," that

the fee was in the grantees of the township. That must depend upon the legal effect of the reservation. While an inclination to opinion is exhibited, that the fee passed to the grantees of the township, a different opinion is stated to be entertained by some, and the true legal effect does not appear to have been either discussed or decided. The effect of such reservations was subsequently presented in the case of *The State of Maine* v. *Cutler*, 16 Maine, 349, and the decision did not determine, in whom the fee was actually vested, while it did decide, that the State in the exercise of its sovereign power might by law, take possession of such lots, and preserve them for the uses designated. It would seem difficult to conclude, that it could do so, if the fee was legally conveyed to the grantees of the township. If it remained in the Commonwealth of Massachusetts, it might well pass to this State, on its separation from that State.

But whatever may be the legal effect of such reservations, there can be little doubt, that in this instance the one thousand acres were intended to be and were excepted from the other land conveyed. The State, by the act before named, and by the reservation contained in the conveyance, constituted itself a trustee, retaining the legal title for the use of the town and retaining the power to designate the particular uses. If the grantees acquired the legal title, the *cestuis que trust* could derive no benefit from it, without their action. But whatever is conveyed to the grantees is conveyed in fee for their own use, without any distinction made between the thousand acres and the residue of the township. There is no declaration of trust, acting upon the one thousand acres, or any obligation imposed upon the grantees to grant or convey the title or to designate the uses. Before the State could be considered to have conveyed the title, and to have reserved, or attempted to do so, a power to declare the uses, the grantees should appear to have acquired the title in trust, or the whole arrangement made by the statute and the conveyance for a reservation would prove to be abortive.

The act of March 17, 1835, c. 170, can have no effect

upon the rights of these parties. It could be applicable only to cases, in which the grantees had acquired the right to locate the lots reserved for public uses.

As the rights of the owners of the residue of the *township* were not violated by a location of the reservation under the act of 1842, it will not be necessary to consider the argument respecting its constitutionality.

The objection, that parol evidence should not have been received to show, that Loring and Turner were acting County Commissioners, cannot be sustained. *Lowell* v. *Flint,* 20 Maine, 401 ; *Doty* v. *Gorham,* 5 Pick. 487 ; *Potter* v. *Luther,* 3 Johns. 431. While making seizure and sale of the logs, they were not in the performance of judicial acts, and their proceedings might be proved by parol evidence. A majority of the County Commissioners might lawfully make seizure and sale of logs cut upon lands located for public uses. Statutes, c. 1, § 3, art. 3, c. 99, § 11 ; act of 1842, c. 33, § 21.

It appeared in evidence, that the logs seized were designated by the letter P marked upon each log. That Brown, who was cutting and hauling logs under the plaintiffs, caused certain logs cut upon lots numbered seven and eight to be marked in the same manner and to be piled with the logs seized. The presiding Judge decided, that the plaintiffs could not have a verdict for a proportional part of the whole number of logs thus piled together ; that they must identify the logs cut, on the lots numbered seven and eight, to be entitled to maintain their action. This decision is alleged to have been erroneous. It is said, that the issue made by the pleadings was, that the logs replevied were the property of the defendants ; and that according to the case of *Greene* v. *Dingley,* 24 Maine, 131, the burden of proof was upon them to make out their title. The brief statement in this case, is not like the one presented in that case. In this case, it makes two allegations, that the logs were the property of the defendants, and that they were not the property of the plaintiffs. There does not appear to have been any counter brief statement, restricting the issue to one of these allegations. Under our system of statute plead-

ing, or rather system without pleading, the general issue does not, as at common law, admit the property to be in the plaintiffs, when accompanied by a brief statement denying the fact. When the pleadings do not admit the property to be in the plaintiffs, or do not present only an issue upon its being the property of the defendants, replevin cannot be maintained without proof of property in the plaintiff. *Waterman* v. *Robinson*, 5 Mass. 303; *Wyman* v. *Dorr*, 3 Greenl. 183.

It is not necessary to inquire, whether the testimony proved a confusion of goods. The rule applied in *Loomis* v. *Green*, 7 Greenl. 386, and in *Lupton* v. *White*, 15 Ves. 432, is a just one, that a person, who voluntarily mingles or intermixes his property with the property of another, must by proof distinguish his own property before he can recover the specific property. If the servant of the plaintiffs, so conducted as to render it difficult if not impossible for them to prove their own property, they, and not the defendants, must bear the loss occasioned by it.

The application for a new trial, for newly discovered evidence, must be denied. The fact, that the defendants, instead of paying in cash for the logs, secured the payment by a bond, cannot vary the rights of these parties. It can have no tendency to prove the logs to have been the property of the plaintiffs. And without such proof, as already stated, they cannot maintain the action.      *Nonsuit confirmed, and*
                           *judgment for a return.*