### SMITH v. MOTTLEY.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1906.)

No. 1,558.

1. BANKRUPTCY—PRIORITY OF DEBTS—LAW GOVERNING.

Whether a claimant is entitled to priority of payment from a fund which passes into the hands of a bankrupt's trustee on the ground that the claimant's money was held in trust by the bankrupt and passed into such fund is not a question to be determined by the priorities allowed under the insolvency laws of the state, which are superseded by the bankruptcy act. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 539.]

2. TRUSTS—SUIT TO RECOVER TRUST FUND—WRONGFUL MINGLING OF FUNDS.

The burden of showing that his property has been wrongfully mingled in the mass of the property of the wrongdoer is upon the owner who seeks to follow the same, but, when this is done, the burden shifts to the wrongdoer to show that the owner's money or property has passed out of his hands, and in that respect his trustee in bankruptcy stands in the same position.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 523, 602.]

3. BANKRUPTCY—DEBT ENTITLED TO PRIORITY OF PAYMENT—TRUST FUND.

Claimant gave a check to a bank for the purpose of paying a note which she supposed the bank held with authority to collect. The bank, which had made the loan for the payee, claimed to have such authority, and accepted and collected the check, placed the proceeds to the credit of the payee, and promised to obtain and surrender the note; the owner being then absent with it. The bank, in fact, had no authority to collect and was insolvent, and became bankrupt shortly thereafter, not having obtained the note nor paid over the money to the payee. From the time the money was received until the bankruptcy the bank had at all times more money on hand than the amount so received and a larger amount passed into the hands of its trustee. Held, that claimant's money was presumably a part of such fund, and that she was entitled to recover the same from the trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 539; vol. 6, Banks and Banking, §§ 157, 189–191, 1116.]

Appeal from the District Court of the United States for the Western District of Kentucky at Bowling Green.

For opinion below, see 143 Fed. 407.

Jno. B. Rodes and W. B. Gaines, for appellant.

John E. Du Bose, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This case comes here on the appeal of Mottley, trustee, from a decree of the District Court in the matter of the bankruptcy of P. J. Potter's Sons, a partnership, and J. E. Potter and W. J. Potter, the partners, reversing an order of the referee allowing and granting priority to a claim of the appellant, who was the petitioner in that court. There is no substantial controversy about the facts which are, so far as they need be stated, as follows: P. J. Potter's Sons was a private banking firm doing business at Bowling Green, Ky. It had for some time been in a failing condition, and on the 11th of April, 1905, was, and, of course, each of the partners was, insolvent; and it had been so long so utterly insolvent that the partners must have known its condition. The firm and individual liabilities upon the failure a few days afterwards were found to be $780,000. The partnership assets were appraised at $300,000, and the nominal assets of the partners' individual assets amounted to $150,000. On the day mentioned Margaret Wintersmith held the note of the petitioner on which there was due $2,315.33. The bank had previously done some business for Miss Wintersmith, and the petitioner, wishing to pay the note, sent her check for the amount due to J. E. Potter, one of the partners, supposing the bank had the authority to receive the money. Miss Wintersmith was then in Mexico. It was ascertained that the bank did not have the note, but Potter assumed to have authority to receive payment of it. On his undertaking to obtain and surrender it upon the return of Miss Wintersmith, which was expected shortly, the check for $2,315.33 was delivered to Potter, who stated that he proposed to turn it in to the bank to the credit of Miss Wintersmith. This was done, and the bank collected the check. From the 11th day of April, 1905, to the time of making its assignment, the bank had on hand at all times more than $7,000 in cash, and the assignee, who is now the trustee, received more than that sum. Neither the bank nor either of the partners had any authority from Miss Wintersmith to receive payment of the note, nor was the payment confirmed by her. Ten days afterwards the bank made a general assignment for the benefit of creditors. In the meantime Miss Wintersmith had not returned; and the petitioner had received no information that Potter and his bank had obtained her money without Miss Wintersmith's authority. In July following creditors of the bank filed a petition in bankruptcy against the bank and the partners, which was granted September 11, 1905. The petitioner, Ella H. Smith, filed her petition, praying for the allowance of her claim for the $2,315.33 as one having preference over general creditors. As has been stated her petition was allowed by the referee who made an order accordingly. The district judge reversed the order so far as it gave preference, upon the ground, as stated in his opinion, that the preference was not one allowed by the bankruptcy act, nor by the laws of Kentucky. To fortify his opinion that by the laws of the state such a preference was not permitted, he referred to its insolvency laws, which specify what liabilities shall be preferred in insolvency proceedings, and do not, as the judge concluded, allow such a preference as this. But we think there was error in holding that the Kentucky insolvency act was relevant to the inquiry. That statute was superseded by the bankruptcy act, which itself prescribes

what debts and obligations shall be given preference. But even in proceedings in bankruptcy priorities, or "preferences" as they are sometimes called when "priorities" are meant, are given out of the estate of the bankrupt, and this after all liens upon the assets and the claims of others in the things which constitute them are discharged.

The question which we have before us comes then to this: Did the petitioner, in the circumstances stated, have a lien upon the assets of the bank for her money, which by the wrongful conduct of the bank was incorporated in them?

We think that upon the authority of our own decisions, and especially that of Smith, Trustee, v. Township of Au Gres (decided at our session in November last) 150 Fed. 257, this question should be answered in the affirmative. The question as there presented was raised in the same way and upon substantially identical facts. In that case the property of the township had been confided to the bankrupt, and he had committed a breach of trust in converting it to his own use and mingling it with his stock of goods, while here the possession of the property was wrongfully taken in the first instance. But it makes no difference in the application of the principle of that decision that in one instance the wrongdoer was lawfully in the possession of the property and in the other not. The critical fact is in the wrongful appropriation by one party of the property of another by mingling it indistinguishably with his own, and it is not ordinarily important by what means he became possessed of the property.

Other cases in which we have recognized and applied the doctrine of the case just cited are City Bank v. Blackmore, 75 Fed. 771, 21 C. C. A. 514, In re Taft, 133 Fed. 511, 66 C. C. A. 385; Holder v. Western German Bank, 136 Fed. 90, 68 C. C. A. 554, and Erie R. Co. v. Dial, 140 Fed. 689, 72 C. C. A. 183. Upon the same facts as in the case of Holder v. Western German Bank, the Circuit Court of Appeals for the Fifth Circuit applied the same principle in reaching a like result. Western German Bank v. Norvell, 134 Fed. 724, 69 C. C. A. 330.

In the absence of any proof to the contrary, the reception of the funds being so near to the assignment by the bank, it may be presumed that the assets which came to the hands of the trustee were augmented by the appropriation of the proceeds of the check. If it were not so, the burden was on the trustee to prove it; or, if not augmented to the whole amount of the check, then to what amount they had been lost out. It is shown that three times the amount of this fund remained in the bank to the time of the assignment and came to the trustee. The burden of showing that his property has been wrongfully mingled in a mass of the property of the wrongdoer is upon the owner; but, when this is done, the burden shifts to the wrongdoer. It is for him to distinguish between his own property and that of the innocent party. Smith, Trustee, v. Township of Au Gres, supra; Hart v. Ten Eyck, 2 Johns. Ch. 108; Starr v. Winegar, 3 Hun (N. Y.) 491; Stephenson v. Little, 10 Mich. 441, 450; Ryder v. Hathaway, 21 Pick. (Mass.) 298, 306; Seavey v. Dearborn, 19 N. H. 361; Robinson v. Holt, 39 N. H. 557, 75 Am. Dec. 233; James v. Burnet, 20 N. J. Law, 635, 642; Kreuzer v. Cooney, 45 Md. 591; Elgin Bank v. Schween, 127 Ill. 580,

20 N. E. 681, 11 Am. St. Rep. 174; Mayer v. Wilkins, 37 Fla. 244, 19 South. 632; Weil v. Silverstone, 6 Bush. (Ky.) 698; Stuart v. Phelps, 39 Iowa, 20; Loomis v. Green, 7 Me. 386; Dillingham v. Smith, 30 Me. 383; Lehman v. Kelly, 68 Ala. 192; Franklin v. Gumersell, 9 Mo. App. 90.

Again, if the trustee takes the bankrupt's property in the same plight' as the bankrupt held it, and while the bankrupt held the assets they became subject to a lien upon the mass, which was not destroyed by its continual transformation in business from day to day, the paying out and receiving in, of parcels of the fund, and no creditor having levied upon it, or the right of an innocent party fastened upon it, it is difficult to see how by the succession of the trustee the lien could be lost. Whether it was a lien or not would continue to be the same question as it was between the bankrupt and the owner of the misappropriated fund.

There would seem to be a valid distinction in the application of the rule that the misappropriated fund must be found in the assets between the settlement of an estate in bankruptcy proceedings and proceedings upon a bill filed for the marshaling and appropriation of assets according to the principles of equity. In the latter case there is a seizure of the res for the direct purpose of fastening the inchoate rights of creditors. In the former the trustee takes the estate as he finds it.

But, however this may be, we think that upon the grounds previously stated, the order of the district judge should be reversed, and the order of the referee restored, and with costs.