## In re J. V. LINDSLEY & CO.

### Petition of ALEXANDER.

(District Court, W. D. Michigan, S. D.   May, 1910.)

1. BANKRUPTCY (§ 140*)—TRUST FUNDS.

Evidence *held* to show that certain checks sent by petitioner to the bankrupts under an automobile agency contract had written thereon at the time they were sent the words "Deposited as security," and that such words, though authorizing the payee to cash the checks, made the proceeds a trust fund in the hands of the bankrupts to secure the delivery by them to petitioner of certain automobiles contracted for.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—FOLLOWING TRUST FUNDS—RIGHT TO PREFERENCE.

Petitioner sent to the bankrupts certain checks, the proceeds of which created a trust fund to secure the delivery of certain automobiles. The checks were deposited by the bankrupts to the credit of their general bank account, and the proceeds mingled with their funds and used in their business some three months or more prior to the time the bankrupts' assets came to the possession of their trustee. *Held*, that the proceeds of the checks were not shown to have increased the assets in the hands of the trustee, and that petitioner was therefore not entitled to a preference claim therefor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In the matter of bankruptcy proceedings of J. V. Lindsley & Co. From a referee's order refusing to allow one Alexander a preference, petitioner files a petition for review.   Affirmed.

Smith & Lyle, for bankrupt.
Charles E. Sweet, for trustee.

DENISON, District Judge.  Lindsley & Co. were manufacturing automobiles at Dowagiac.  Alexander of New Mexico, proposing to act as selling agent, ordered two machines at the agreed total price of $1,000.  On August 18, 1908, he sent to Lindsley & Co. his check for $500, and on August 31st his second check for the same amount. The machines were never sent, and Alexander canceled the order, and demanded the return of his money.  This demand remained not complied with, when, about December 9, 1908, a bankruptcy petition was filed against Lindsley & Co.  The schedules later filed showed liabilities of $26,000 and assets of $9,000.

Upon the question whether Alexander's two checks were a payment in advance for machines to be delivered, or whether they or their proceeds constituted a special deposit to be held as security for such payment when the machines were delivered and accepted, and thus became a trust fund, the equitable title to which remained in Alexander, the referee found against the special deposit theory.  I think the referee excluded evidence fairly entitled to consideration, and that the whole record leads to the contrary conclusion.  Each check now bears the memorandum, "Deposited as security only."  Alexander testifies that each check bore this memorandum when he made it

and mailed it to Lindsley, and the cashier of the New Mexico bank, upon which the first check was drawn, testifies that when the check was paid by his bank, August 29th, the words were there. The evidence to the contrary consists only of the statement of the teller of the Dowagiac bank which received the checks from Lindsley that he does not remember any such memorandum, and of an opinion stated by one witness and by counsel that inspection shows the writing of these words to be of later date. This recollection and this inspection do not justify rejecting the positive evidence of Alexander and the Las Vegas cashier.

Further, Alexander seems to say, though rather indefinitely, that by his first letter of August 20th, inclosing the first check, he made specific requirement that the check was to constitute such a deposit for security. He produces no copy of this letter to support his recollection as to its contents; but, though the original was certainly received by Lindsley & Co., it was not produced in behalf of the trustee. The absence of the copy is no more suspicious than the absence of the original. As to the second check, Alexander produces what he testifies is a copy of the inclosing letter, which again specifically requires that the payment shall constitute a deposit for security. It appears that the trustee cannot find the original of this letter among the papers of the bankrupt firm, and counsel suggest that no such letter was written, and that the copy has been fabricated for the purposes of this case. This suggestion is based on mere suspicion; and such peculiar circumstances as there are in connection with its production and appearance do not justify a finding of fraud and perjury on the part of the claimant.

The fact that no formal notice in advance of the hearing before the referee had been given to the trustee requiring the production of the original of these two letters should not, I think, exclude secondary evidence of their contents where, before the hearing was finished, it appeared, as to the second letter, that the trustee had made search and could not find the original, and where, as to the first letter, the receipt of a letter of that date by the bankrupt was admitted and the trustee had full opportunity to produce the original if he wished or could find it. It is not reasonable to suppose that the checks were not to be cashed, otherwise they would be useless for any purpose; but it was their proceeds which was to form a "deposit for security only."

It must therefore be taken as established that the bankrupts on or before September 4, 1908, held $1,000 of Alexander's money as a special deposit or trust fund to secure the delivery by the bankrupts to him of the two machines in question. There is no proof of the special disposition of the proceeds of these checks, excepting that each was deposited in Lindsley & Co.'s general bank account, mingled with the bankrupt's moneys, and then, in the language of the stipulation, "used by them in their business." The proof stops there. I think this falls short of establishing the fact that the trust fund increased the assets which came into the possession of the bankrupt's trustee, with the clearness with which such establishment is required, in order

to carry the lien over against the general body of the assets received by the bankruptcy trustee. I think, rather, that the facts of this case bring it within the rule of Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100, decided in 1907 by the Circuit Court of Appeals of this circuit. This case reviews fully the conflicting authorities, and distinguishes the two cases of Smith v. Mottley (6th Circuit) 17 Am. Bankr. Rep. 863, 150 Fed. 266, 80 C. C. A. 154, and Smith v. Au Gres (6th Circuit) 17 Am. Bankr. Rep. 745, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876, which seem to be the cases chiefly relied upon by claimant, Alexander, to establish his theory of lien. In the present case the trust fund was mingled and used in a general business three months and more before the assets reached the form in which they came to the trustee, and it is as probable and more probable that they had been used to pay debts, or refunds, or had been dissipated in expenses, losses, or partners' overdrafts, as that they had purchased, mediately or immediately, any of the assets on hand—indeed, the proof is that the stock on hand had been purchased after October.

The order of the referee refusing to allow Alexander any preference is affirmed.