# CHRISTENSEN v. JESSEN.

## No. 15,442; June 4, 1895.

### 40 Pac. 747.

Pleading—Defects.—Judgment will not be Reversed because of a defective allegation which did not mislead the opposite party, and which was not objected to by demurrer, and under which evidence was admitted without objection.

Limitation of Actions—Fraud or Mistake.—Code of Civil Procedure, section 338, subdivision 4, limiting to three years "an action for relief on the ground of fraud or mistake," applies to an action at law, as well as in equity.[1]

Assignment of Lease—Fraud in Procuring—Evidence.—Defendant having induced plaintiff to consent to an assignment of a lease by representations that the assignment provided for an annual rent of $800 to be paid plaintiff, it is unnecessary, in an action for fraudulent representations, that plaintiff prove that $800 could have been obtained, but if no more than $500, the amount actually provided for in the assignment, could have been obtained, this was a matter of defense.

APPEAL from Superior Court, Alameda County; F. W. Henshaw, Judge.

Action by Anna Christensen, as executrix of P. J. Christensen, against H. P. Jessen. Judgment for plaintiff. Defendant appeals. Affirmed.

John J. Roche for appellant; Joseph Hutchinson for respondent.

---

[1] Cited and approved in Lightner Mining Co. v. Lane, 161 Cal. 702, 120 Pac. 777, holding that subdivision 4 of section 338, Code of Civil Procedure, covers the case of the owners of contiguous mines, where one has been secretly removing and appropriating ore from the mine of the other.

Cited and followed in Lightner Mining Co. v. Lane, 161 Cal. 699, 120 Pac. 775, as being within the rule laid down by Justice Field in the early case of Kane v. Cook, 8 Cal. 449, "that in all cases a fraudulent concealment of fact, upon the existence of which the cause of action accrues, is a good answer to the plea of the statute of limitations."

Cited and followed in Lightner Mining Co. v. Lane, 161 Cal. 689, 120 Pac. 777, where it was held that an action for ore extracted from the plaintiff's mine would not accrue until the discovery of the fraudulent taking of the ore.

HAYNES, C.—This action was commenced August 29, 1891, by Peter J. Christensen against H. P. Jessen, to recover damages alleged to have been sustained by the plaintiff by reason of fraudulent misrepresentations made to him by defendant. All the issues, except that arising upon defendant's plea of the statute of limitations, were submitted to a jury, which found a verdict in favor of the plaintiff for $2,000 damages; and, the court having found for the plaintiff upon the plea of the statute of limitations, judgment was entered upon the verdict, and defendant appeals therefrom, and from an order denying his motion for a new trial. Appellant concedes that the evidence was conflicting, and that the verdict of the jury upon the facts must be accepted, leaving only questions of law to be considered. Peter J. Christensen died since the trial, and his executrix has been duly substituted; but, for convenience, he will be referred to as plaintiff and respondent in this opinion, as though still in life.

Plaintiff was the owner of a salt claim in Alameda county. In October, 1883, he executed to defendant a lease of the same for the term of five years, commencing January 1, 1884, at an annual rent of $500, with the privilege of a renewal for five years more on the same terms; but the lease prohibited the defendant from letting or underletting the whole or any part of the premises without the written consent of the plaintiff. The defendant also owned a salt claim adjoining that of plaintiff, and was the lessee of another claim owned by Peter Mattison. In the early part of 1887 the Union Pacific Salt Company, the American Salt Company, B. F. Barton, E. M. Block, John A. Plummer and Charles A. Plummer formed a combination or company for the purpose of controlling all the salt claims in that locality, and, among them, those controlled by defendant. The combination made defendant a satisfactory offer for his own and the Mattison claim, but that offer was conditioned upon securing plaintiff's claim also, to accomplish which plaintiff's written consent was necessary, and the company also desired to have the option of a second renewal of the lease from plaintiff for the term of five years. On March 10, 1887, the defendant called on plaintiff, and informed him that the company wanted to secure his (plaintiff's) salt claim, but that he (defendant) had no right to lease it. There was then about two years of the original term of five years of defendant's lease unexpired, and plaintiff said,

"If the company takes it, I want $800, and you can have the benefit of the two years," to which the defendant replied, "All right." Defendant then called on Mr. Plummer, a member of the company, and informed him of plaintiff's terms, and he said he would present it to the other parties. Defendant, however, did not wait to know whether the terms proposed would be accepted, but went to San Francisco, where his lease was, and had the following consent indorsed upon it: "I hereby consent that said Hans P. Jessen may underlet or assign this lease to the Union Pacific Salt Co., American Salt Co., B. F. Barton, E. M. Block, John A. Plummer, and Charles A. Plummer. It is further agreed that said Jessen, or his assigns, shall have the privilege of renewing this lease at the expiration of the first renewal thereof. If such first renewal should be made, the second renewal to be for the term ending on the 18th day of March, 1897." The defendant, on his way to Oakland, read the indorsement, and, as he testified, concluded plaintiff "would not stand that," and called upon an attorney in Oakland, and had the following added to the indorsement above quoted: "The annual rent for the term commencing at the second renewal to be eight hundred dollars." The defendant took the lease, with the said indorsement of consent upon it, to the plaintiff, who tried to read it, but was unable to do so, so as to understand it, whereupon the defendant read it to him, and plaintiff asked, "After the two years, then, I can go and collect my $800 from the company?" and defendant replied, "Yes, that is what it says," and plaintiff signed it. Under the instructions of the court, to which no exceptions were taken, the verdict of the jury is conclusive as to the relations of these parties, and the right of the plaintiff to rely upon the representations made to him by defendant, and hence the evidence upon that point need not be stated. For the two years remaining of the original term, defendant collected the rent, and paid plaintiff annually $500; plaintiff supposing that defendant received $800, and retained $300, according to the said proposition. In January, 1889, the original term having expired, and the first renewal begun, defendant told plaintiff he could go and collect his rent from the company, and then further told him: "There is a misunderstanding in the lease. It only says $500." Plaintiff asked whether he had not collected $800, and he said, "No, I let him have mine for the same I had it,"

and added: "I think you will get your $800 from Barton, he and his clerk read the lease over several times, and they understand it the same way; and I think, if they pay you once, they will keep on paying you." On applying for his rent the company gave him a check for $800, but on May 23d he received a letter from the company informing him that they had overpaid him $300; that until January, 1894, the rent would be $500, and after that date $800. Plaintiff then saw the defendant, who claimed that "Plummer done it," and, relying upon his representation that it was a "mistake," commenced an action to reform the indorsement upon that ground. That cause came on for trial on August 19, 1891; and Jessen, being called as a witness by the plaintiff, then first disclosed the manner in which said indorsement was prepared, as hereinbefore recited. Plaintiff was thereupon nonsuited in that action, and ten days later commenced this action to recover damages for the fraud.

Appellant contends that his demurrer to the complaint should have been sustained. The grounds alleged were that facts sufficient to constitute a cause of action were not stated, and that the cause of action was barred by the statute of limitations, specifying subdivision 4, section 338, and subdivision 1, section 339, of the Code of Civil Procedure. He insists that the complaint is fatally defective in not negativing a discovery of the facts constituting the fraud more than three years before commencing the action. The averments of the complaint objected to are as follows: "That plaintiff did not discover the said fraud perpetrated upon him by defendant until, to wit, on or about the 18th day of August, 1891; that, long prior to the last-named date, plaintiff discovered the true effect and meaning of said indorsement, but, until the last-named date, supposed the same to have been the result of mistake." Plaintiff's allegation above quoted is not as full and specific as it should have been, but no objection upon that ground was taken by demurrer, nor was any objection made to the admission of evidence upon the ground that said allegation was insufficient, or in any respect uncertain or defective. The evidence being sufficient, and having been received without objection, the judgment should not be reversed because of a defective allegation which did not mislead the defendant, and which was treated upon the trial as sufficient. This rule is constantly adhered to in this court, and is applied

to cases of this character, as well as to others: See Sukeforth v. Lord, 87 Cal. 399, 25 Pac. 497, and cases there cited.

The answer of defendant contained pleas of the statutes of limitation, which, upon the trial, were submitted to the court, and found in favor of the plaintiff; and in so finding, it is contended, the court erred. It is argued that plaintiff's cause of action falls under subdivision 1 of section 339, Code of Civil Procedure, which limits an action upon a contract, obligation, or liability not founded upon an instrument of writing to two years, and that it does not fall under subdivision 4 of section 338, limiting actions to three years, which subdivision is as follows: "(4) An Action for Relief on the Ground of Fraud or Mistake. The cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." His argument is that the "relief" to which reference is made in the section last above cited is "equitable relief," and that this is an action at law for damages, and, in support of that proposition, cites Piller v. Railroad Co., 52 Cal. 42. That was an action against a railroad company for personal injuries received in a collision. The statement there made was that "the first clause of subdivision 1 of section 339 is applicable to all actions at law, not specifically mentioned in other portions of the statute. We say actions at law advisedly, since section 343 fixes the time within which certain bills in equity may be filed." Counsel's argument concedes that an action at law will lie for fraud, and, if so, it is one of these cases "specifically mentioned in other portions of the statute." The section of the code in question applies to any and all actions permitted by the code for the purpose of obtaining relief upon the ground of fraud or mistake, whether such action be legal or equitable. The code expressly uses the word "relief" to designate the object of all civil actions. Section 426 of the Code of Civil Procedure provides: "The complaint must contain: . . . . (3) A demand of the relief which the plaintiff claims. If the recovery of money or damages be demanded, the amount thereof must be stated." Appellant further distinguishes between "knowledge of the fraud," and "knowledge of the facts constituting the fraud," and insists that plaintiff had such knowledge of the facts as charged him with a knowledge of the fraud more than three

years before the commencement of the action. The fact that a fraud was perpetrated on the plaintiff by the defendant in March, 1887, is not controverted on this appeal, the jury having so found upon conflicting testimony. It is clear, then, that the knowledge of the facts constituting the fraud came to the plaintiff after the date of the transaction of March 12, 1887; and we see nothing in the evidence which tended to call plaintiff's attention to the transaction, or to disclose the fraud, or to put him upon inquiry, until January, 1889, when defendant told him he could go and get his rent from the company, adding that there was "a misunderstanding in the lease," but he thought they would pay him his $800. It will be remembered that plaintiff's proposition was that he would consent to the subletting if the company would pay $800 per annum, the defendant to have the benefit of the $300 increase of rent for the two years the lease had to run before the first renewal, and that the defendant collected the rent and paid the plaintiff his $500 per annum until January, 1889, which was the beginning of the first renewal, and the beginning of the increased rent to the plaintiff, when he was told there was a mistake, that "Plummer did it." He was paid $800, however, and was not informed by the company until May, 1889, that he was overpaid. His discovery of the fact that the lease did not provide for an increase of rent was not made before January, 1889, and this action was commenced in August, 1891, and it was not until ten days before the commencement of this action that he learned that, instead of a mistake made by Plummer, it was a fraud perpetrated by the defendant. But if it be conceded that he was put upon inquiry, and should have discovered the facts constituting the fraud in January or May, 1889, this action was commenced less than three years thereafter, and was not barred by the statute. Appellant's contention that, if defendant misread the indorsement to plaintiff, the latter was negligent in not reading it himself, or procuring someone else to read it, is not an open question here, either upon the law or the facts.

It is not necessary to determine whether the court erred in permitting the plaintiff to testify as to the rental paid by the company for other salt claims in the same neighborhood, and the quantity of salt produced by each; for, if it be conceded that defendant's objection should have been sustained, the judgment should not be reversed upon that ground, since the

only object of the testimony was to show that the company would have paid the increased rent, and John A. Plummer, one of the assignees of the lease, and one of defendant's witnesses, testified upon cross-examination that he would have consented to pay $800, "but it was a matter of indifference." Not only so, but plaintiff's consent to the assignment of the lease having been obtained by defendant upon the representation that the company had agreed to pay $800 per annum, the allegation of value in the complaint was unnecessary; and if, as a matter of fact, no more than the original rent of $500 could have been obtained, it was matter of defense to be alleged and proved by the defendant, if, indeed, he were not estopped by his representation from making such allegation and proof. The judgment and order appealed from should be affirmed.

We concur: Belcher, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.